J-S85017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GREGG MORRISON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ROBERT MAHONEY AND MELISSA MAHONEY | |
| APPEAL OF: ROBERT MAHONEY | No. 973 EDA 2016 |

Appeal from the Order March 2, 2016
in the Court of Common Pleas of Bucks County
Civil Division at No(s): 2013-07606

BEFORE:  PANELLA, J., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY RANSOM, J.:                **FILED JANUARY 09, 2017**

Robert Mahoney ("Appellant") appeals from the trial court's order of March 2, 2016, imposing $2,000 in counsel fee sanctions following his failure to comply with the court's order of May 26, 2015.  After careful review, we affirm.

The matter underlying the instant appeal is the result of a property dispute.  In 2003, Gregg Morrison ("Mr. Morrison"), Melissa Mahoney ("Ms. Mahoney"), and Appellant[1] became the owners of real property and improvements thereon located at 203 Schoolhouse Road, Hilltown Township, Bucks County, Pennsylvania (the "Property").  In October of 2009, Mr. Morrison and Ms. Mahoney decided to sell the Property; however, all parties

_____

[1] Appellant is Ms. Mahoney's father.

could not reach an agreement on the sale price. In September of 2013, Mr. Morrison brought a complaint in partition, as the Property remained unsold. Appellant did not contest the sale of the Property and agreed the court should issue a decree.

In July of 2014, the court issued an order directing the Property to be partitioned. In August of 2014, following a conference, the trial court issued another order outlining the parameters for sale in the six months subsequent to the order. The Property did not sell. Thus, another hearing was held on May 11, 2015. At this hearing the parties specifically discussed whether the Property should be auctioned. The court also learned that the condition of the Property had declined as a result of a lack of regular maintenance and Ms. Mahoney's son living at the property. Mr. Morrison's counsel opined that should the Property go to auction, a reserve price[2] of $300,000 would cover Morrison's outstanding mortgage on the Property and associated second line of credit. Counsel then explained that Mr. Morrison was the only party presently financially responsible for the house.[3] *Id*. at 16-17, 20. Appellant and his counsel were present at the hearing. N.T. 3/2/16, at 17.

_____

[2] The lowest price for which the Property could be auctioned. Notes of Testimony (N.T.), 5/11/15, at 16-17.

[3] Counsel further explained that Mr. Morrison paid approximately $2,700 per month towards the Property for the past two years without living there, and Mr. Morrison would continue to be obligated to do so until the resolution of the property dispute. *Id*. at 20-21. Since August 2014, Appellant had paid $450 towards maintenance on the Property, and had not contributed
*(Footnote Continued Next Page)*

Based upon proposed orders submitted by the parties, the court issued

an order on May 26, 2015, which provided the following in relevant part:

> 3. The parties have seven (7) days from the date of this Order to remove any and all personal belongings, household goods and furnishing that remain at the premises. . . Any personal property remaining at the premises after this time period shall be deemed abandoned.
>
> * * *
>
> 5. The parties will execute a listing contract with the Broker, Weidel Real Estate, from the period of June 1, 2015 through September 30, 2015. The parties shall cooperate in all reasonable respects with Weidel and its agents and other real estate agents, in attempting to sell the property.
>
> 6. Said premises shall be listed for sale with a listing price of Five Hundred Thousand Dollars ($500,000).
>
> 7. In the event that the premises are not sold by September 30, 2015, the premises shall be immediately listed for auction with Alderfer with a reserve price of Three Hundred Thousand Dollars ($300,000). All parties shall sign, without delay, any contract required to list the property with Alderfer.
>
> 8. The parties may petition this [c]ourt for a hearing for a determination of whether an offer should be accepted and on what terms.

Trial Court Order, 5/26/15 ("May 26th Order").[4]

_(Footnote Continued)_ ─────────────

otherwise financially towards the mortgage, utilities or real estate taxes of the Property since that time. N.T., 3/2/16, at 28-29.

[4] In its opinion, the trial court cites the date of this order as May 24, 2015, however the date of May 26, 2015 is handwritten in the body of the order.

The Property did not sell by the September 30, 2015 deadline. Mr. Morrison's counsel forwarded the auction contract to Appellant for signature in accordance with the order. Appellant declined sign the auction contract. In November of 2015, Appellant filed a motion to reconsider the terms of the May 26th Order, and a hearing was scheduled for January 20, 2016. Neither Appellant nor his counsel appeared at this hearing, and the reconsideration motion was denied and dismissed.

On January 26, 2015, Mr. Morrison filed a motion to enforce the May 26th Order and a motion for sanctions. According to Mr. Morrison, Appellant knowingly and intentionally violated the court's order "for the specific purpose of delaying the sale of the property so as to financially punish [Mr. Morrison]." *See* Plaintiff's Motion for Enforcement of Judge's Order and Sanctions Against Defendant Robert E. Mahoney and Counsel. Mr. Morrison requested $2,000 in attorney's fees in relief.[5] *Id*. A hearing on the motion for sanctions was set for March 2, 2016. On February 23, 2016, Appellant filed a second motion for reconsideration of the May 26th Order.

At the outset of the hearing, the court clarified that its purpose was to examine whether Appellant's non-compliance was contemptuous.[6] N.T.,

---

[5] Mr. Morrison did not cite statutory authority in support of his motion for sanctions.

[6] Despite the patently untimely filing of Appellant's motion for reconsideration of the May 26th Order, the trial court, in its discretion
*(Footnote Continued Next Page)*

3/2/16, at 2-3, 7. In response, Appellant testified that he had no recollection of agreeing to a $300,000 reserve price. *Id*. at 18, 23. According to Appellant, he first realized this requirement in October of 2015, when the Weidel listing period ended. *Id*. at 20-23. Following his testimony and cross-examination, his counsel argued that Appellant's non-compliance was neither willful nor disrespectful of the court and that "nothing contemptuous" was intended. *Id*. at 29-32, 46.

The court also permitted Appellant to introduce the testimony of Anthony Gentile ("Mr. Gentile"), who owns land adjacent to the Property. *Id*. at 33-34. Mr. Gentile testified that he offered to buy the Property for $350,000 in late November of 2015. *Id*. Appellant relied upon this testimony to support his assertion of intervening circumstances that justified a modification of the reserve price. *Id*. at 17, 36.

Following the hearing, the court granted the motion for sanctions, found Appellant in contempt, and directed him to pay $2,000 in Mr. Morrison's counsel fees. *Id*. at 46. The court further directed Appellant to execute the auction contract with Alderfer, amended to the extent that the reserve price would be established at $350,000. *Id*.

*(Footnote Continued)* ———————————

decided to resolve the motion at the time of the contempt hearing. ***See Atlantic Richfield Co. v. J.J. White***, 448 A.2d 634 (Pa. Super. 1982) (recognizing, "a court has inherent power to reconsider its own rulings.").

Appellant timely appealed and filed a statement of issues raised on appeal. The trial court filed a responsive opinion.

Appellant presents the following questions for our review:

1. Whether the court below failed to follow required legal procedures or misapplied the law when it rendered its credibility finding, beyond "any doubt" that Mr. Mahoney purposefully was attempting to delay the partition sale, where the only proceedings before doing so were conferences in which the court heard the contested, unsworn an unrecorded characterizations of the facts by counsel, the verity of which necessarily depended upon the unsworn hearsay contentions of their clients, sans cross-examination and before any hearing had been conducted?

2. Whether there is anything contumacious in moving a court to modify a previous order:
   a. where the court has jurisdiction to entertain the motion;
   b. where the motion was not only justiciable but meritorious;
   c. where material changes in circumstances had occurred since entry of the original order;
   d. where failing to file the motion would have required the parties to enter a contract with a third-party creating new legal obligations not then modifiable by the court;
   e. where the filing of the motion was the only recourse to avoid the above prejudice;
   f. where the order itself permitted the parties to petition to determine such issues.

Appellant's Brief at 4.

Appellant contends that the trial court prejudged Appellant's credibility and did not follow legal procedures in making the contempt determination. Appellant's Brief, 7/26/16, at 9, 13, 15-19. Moreover, the Appellant contends the granting of his motion for reconsideration undermined the

court's conclusion to find Appellant in civil contempt. Appellant's Brief at 23-25. We find Appellant's arguments unpersuasive.[7]

As this Court has observed regarding civil contempt, "it is axiomatic that courts have always possessed the inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with said orders." *Geisenhemer–Shaulis*, 827 A.2d. 1207.

> To be punished for contempt, a party must not only have violated a clear order, but that order must have been **definite, clear, and specific**—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements:

---

[7] The court's order imposing sanctions does not specifically find Appellant in civil contempt. Similarly, the court's opinion does not discuss the authority for imposing counsel fee sanctions. Adding to the confusion, Mr. Morrison argues in his Brief that the court imposed sanctions pursuant to 42 Pa.C.S.A. § 2503(7). Appellee's Brief at 10. An award of counsel fees may be a sanction following a finding of contempt, or may be awarded to a party pursuant to 42 Pa.C.S.A. § 2503(7) "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7). An award of counsel fees under 42 Pa.C.S.A. § 2503 is distinct from a finding of civil contempt that might include sanctions in the form of counsel fees. *Wood v. Geisenhemer–Shaulis*, 827 A.2d 1204, 1207 (Pa. Super. 2003). Upon review of the record and notes of testimony, we conclude that the trial court indeed found Appellant in civil contempt and awarded counsel fees in conjunction thereto. Civil contempt orders imposing sanctions generally constitute final, appealable orders. *Rhoades v. Pryce*, 874 A.2d 148, 151 (Pa. Super. 2005) (*en banc*), *appeal denied*, 851 A.2d 142 (Pa. 2004) (quoting *Foulk v. Foulk*, 789 A.2d 254, 258 (Pa. Super. 2001) (*en banc*)).

(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

*Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 67–68 (Pa. Super. 2016) (emphasis in original) (citing *Stahl v. Redcay*, 897 A.2d 488–89 (Pa. Super. 2006).

Generally, "[i]n order to hold one in civil contempt, a five-step process must be followed: (1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute, (4) a hearing on the contempt citation, and (5) an adjudication." Fulfillment of all five factors is not mandated, however. "[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense." The court, after finding civil contempt, may impose sanctions.

*Geisenhemer-Shaulis*, 827 A.2d 1208 (internal citations omitted).

Our standard of review is as follows:

[E]ach court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence.

*Redcay*, 897 A.2d 489 (internal citations omitted).

In the instant case, the record established that the court comported with the due process requirements of *Geisenhemer-Shaulis* in conducting Appellant's contempt hearing. Testimony presented at the hearing established that Appellant had notice of the May 26th Order when he

intentionally failed to sign the contract for auction and that Appellant failed to sign the contract with wrongful intent.

We note that the May 26th Order was definite, clear, and specific. Appellant demonstrated knowledge of other provisions of the Order. For example, on cross-examination, Appellant conceded he went to the Property for the purpose of removing his belongings pursuant to the Order. N.T., 3/2/16, at 29-32. Appellant's actions in attempting to remove his belongings from the Property undermined his testimony that he had no knowledge of the reserve price contained in the May 26th Order until October 2015. *Id*. at 20-23.

Appellant's testimony that upon receipt of the auction contract, he declined to sign the document and instead contacted his attorney, coupled with Mr. Morrison's role as the only party financially responsible for the Property, led the court to find that Appellant willfully failed to comply with the court's order of May 26th and had wrongful intent in doing so. *Id*.; *see Sutch*, 142 A.3d 67-68. We are mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appear before it, as that court has had the opportunity to observe their demeanor. *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (citing *Alfred v. Braxton*, 659 A.2d 1040, 1043 (Pa. Super. 1995)).

The May 26th Order was filed following a full hearing where counsel of all parties, as well as Mr. Morrison and Appellant were present and discussed

potential terms of the May 26th Order. After Appellant's violation of the May 26th Order, Appellant received notice of the violations alleged when Morrison filed a motion for sanctions and a hearing was set to discuss same. On March 2, 2016, Appellant was then afforded an opportunity for explanation and defense of the violation at the sanctions hearing wherein he and Mr. Gentile testified. The court expressly found that Appellant failed to comply with the terms of the Order previously entered directing him to execute paperwork presented in this matter and thereafter properly imposed $2,000 in compensatory attorney fee sanctions.[8]

The fact that the court granted Appellant's second motion for reconsideration is of no moment. The motion for reconsideration was filed almost six months after the court's May 26th Order. Appellant testified that the amount of the reserve price prevented him from complying with the Order and signing the auction contract in October. However, the $300,000 reserve price was not only discussed in Appellant's presence before it was memorialized in court order, but upon receipt and reading the May 26th Order, Appellant had ample opportunity to file a motion for reconsideration in a timely fashion.[9] Nevertheless, the court recognized valid grounds to

_____

[8] Appellant does not challenge the amount of sanctions imposed, as such we do not reach the reasonableness of the amount awarded herein.

[9] The May 26th Order provided the parties with the option to petition the court for a hearing to determine "whether an offer should be accepted and
*(Footnote Continued Next Page)*

modify the reserve price based on the testimony of Mr. Gentile, who, one month after Appellant had already violated the court's Order, offered to buy the property for $50,000 above the reserve price. N.T., 3/2/16, at 34.

Appellant's knowledge of other provisions of the May 26th Order, coupled with Appellant's receipt of the auction contract, refusal to sign it, and the fact that Mr. Morrison was the sole party making financial contributions on the Property, led the court to find that Appellant's failure to comply with the court's Order was volitional and accomplished with wrongful intent. *See Sutch*, 142 A.3d 67-68. As such, the court awarded Mr. Morrison counsel fees as compensation for the damages he sustained by reason of Appellant's contumacious behavior. Therefore, we discern no abuse of discretion, and no relief is due.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2017

_____
*(Footnote Continued)*

on what terms." May 26[th] Order. Appellant's motion for reconsideration is not analogous to this provision as he misstates in his Brief. Appellant's Brief at 4.